## Evahlyn Stromsem, Appellee, v. Harold J. Stromsem, Appellant.

### Gen. No. 45,267.

Opinion filed November 5, 1951. Rehearing denied November 20, 1951. Released for publication November 20, 1951.

ROTHBART & ROSENFIELD, of Chicago, for appellant; EDWARD ROTHBART, JULIUS M. ROSENFIELD, and JOSEPH STEIN, all of Chicago, of counsel.

George C. Rabens, of Chicago, for appellee.

Mr. Justice Friend delivered the opinion of the court.

March 13, 1946 Evahlyn Stromsem filed a complaint for divorce against Harold J. Stromsem, joining as defendants his father and mother, Henry and Maggie Stromsem. Prior to the hearing, which was uncontested, the principal parties had made an agreement in writing as to their respective property rights which was approved by the chancellor as fair and reasonable. Before the decree was entered on May 2, 1947 plaintiff testified that she understood the terms of the agreement, the payments that were to be made to her, the security to be given for the performance thereof, and the federal tax implications involved. Under the terms of the agreement defendant Harold J. Stromsem undertook to pay plaintiff $100,000 in the following manner: (1) $35,000 cash in payment of the undivided one-half interest in and to the real estate and household furnishings and effects at 1035 Park avenue, River Forest, Illinois, where the principal parties had resided and which was held by them in joint tenancy; (2) $55,000 in lieu and in bar of alimony, dower and any other rights plaintiff had or might have had in the property of Harold J. Stromsem, to be paid in 122 monthly installments commencing thirty days after date of the final decree, 121 of said installments in the sum of $450 and a final payment of $550; and (3) $10,000 as her attorneys' fees, $5,000 to be paid in cash, and the balance to be evidenced by a note to her counsel due six months after date of the final decree; all the notes, including the note for attorneys' fees, were to be secured by a first mortgage on their home in River Forest as well as on farm property in the State of Michigan, were to bear interest at six per cent after maturity, and to be signed by Harold J. Stromsem, and by Henry and Maggie Stromsem as co-makers.

531

Following the entry of the decree plaintiff received $35,000 as agreed, $5,000 was paid to her attorneys, and the note for $5,000 which they received was paid at maturity. Thereafter Harold J. Stromsem paid plaintiff $450 each month until September 1949, when he filed his verified petition asking to be relieved from further monthly payments by reason of the remarriage of plaintiff. October 14, 1949 plaintiff made a motion to strike Stromsem's petition, and at the same time filed her verified petition alleging that she had been obliged to retain counsel, that Harold J. Stromsem was a man of substantial wealth and able to pay for the services of her counsel, and asking that he be required to pay her attorney's fees. Pursuant to a brief hearing in which plaintiff's counsel testified that he had spent in excess of seventy-five hours in defense of Stromsem's petition, the court entered an order allowing $2,500 as attorney's fees. Stromsem took an appeal from the order striking his petition to relieve him from further payments by reason of plaintiff's remarriage, and also from the award of attorney's fees. After the appeal had been perfected plaintiff filed another petition for the allowance of attorney's fees in connection with the appeals, and on June 22, 1950 a third order was entered allowing her the sum of $250 for costs and expenses relative to the defense of the appeal and $2,500 attorney's fees, from which Harold J. Stromsem also appeals. August 14, 1950, cause No. 45293 [344 Ill. App. 553], being an appeal from the aggregate award of $5,000 attorney's fees and $250 costs, was consolidated with cause No. 45267, which embodies the principal controversy between the parties.

 The controlling question presented is whether the amount of $55,000 required to be paid by defendant in installments over a period of approximately ten years constituted a settlement and therefore became a vested property right of plaintiff upon the entry

of the decree or whether it was merely a provision for the payment of periodic alimony which became modifiable under section 18 of the Divorce Act as to installments accruing after plaintiff's remarriage. The applicable provision of the Divorce Act (Ill. Rev. Stat. 1945, ch. 40, par. 19, sec. 18) [Jones Ill. Stats. Ann. 109.186] touching upon the rights of a husband or wife to receive alimony and maintenance when a divorce is decreed, provided that a party "shall not be entitled to alimony and maintenance after remarriage." In determining whether the $55,000 payment constituted a property settlement between the parties or payment of alimony, the authorities are in accord, and counsel upon oral argument agreed, that the entire record must be examined and each case determined upon the existing facts. In plaintiff's amended complaint, upon which the decree of divorce was entered, she alleged that defendant Harold J. Stromsem was the owner of property valued at more than $500,000; that he was a partner in the Kinzie Manufacturing Company; that he had an interest in a mercury mine in Arizona and in the Florola Nut Oil Company in Florola, Alabama; that he was engaged in cattle raising in the upper Michigan peninsula and elsewhere; that he had an annual income in excess of $50,000; that there were in existence various trusts for his benefit; that plaintiff had a joint tenancy interest in the home in River Forest, Illinois, the value thereof being approximately $100,000; that defendant had deprived her of a certain automobile which was her property; and that there was a conspiracy on the part of Henry and Maggie Stromsem, defendant's parents, to alienate his affections, and a conspiracy on the part of all three to conceal his real and personal property.

In the petition filed May 26, 1947 by Harold J. Stromsem he refers specifically to a "settlement" of $100,000 without in any manner or form relating the same to the payment of alimony, and on the hearing

before the chancellor, with reference to the agreement made by the parties prior to the entry of the divorce decree, plaintiff was specifically asked by defendant's attorney: "You are to execute such release [referring to a release of dower and other rights that she may have had against defendant's interests] as part of the consideration for this settlement?" to which she answered "Yes." This in itself would seem to indicate that the provision for the payment of $55,000 was not one related to the payment of alimony, but rested upon considerations of substantial value and independent of any claim for alimony. Moreover, under the findings of the decree the payments were to be secured by mortgage and notes made not only by defendant Harold J. Stromsem but also by his parents Henry and Maggie Stromsem who were codefendants in the suit and who were undoubtedly interested in securing a release of the claim against them for alienation of affections and concealment of the assets of Harold J. Stromsem. Of course they were not and could not be required to pay alimony, and their obligation on the notes must therefore be recognized as based upon other considerations. There is also the provision in the agreement for interest after maturity of any unpaid installments. Unless the payment of $55,000 is to be regarded as a vested right, it is difficult to understand what right to interest there could be on such an obligation.

Plaintiff's contention that the $55,000 payments were part of a full settlement of the property rights between the parties is further borne out by the provisions of the decree which found that the Stromsems "have entered into a settlement of their respective property rights pursuant to their stipulation made in open court . . . ," and "that immediately upon the entry of a final decree in this cause, Harold J. Stromsem, defendant, shall pay to Evahlyn Stromsem, plaintiff, a settlement of $100,000.00, in the following man-

ner: (a) $35,000.00 cash; or by cashier's check, payable to Evahlyn Stromsem, plaintiff, and Bohrer, Blackman and Loman her attorneys; (b) $55,000.00 in one hundred twenty-two (122) monthly installments, commencing thirty (30) days after date of the final decree; 121 of said monthly installments in the sum of $450.00 each, and a final installment of $550.00; (c) $10,000.00 attorneys fees . . ." The court further found "that the foregoing agreement is fair and reasonable, and . . . approves the terms and conditions thereof; . . . that the Court hereby retains jurisdiction only for the purpose of enforcing the full performance of the terms and conditions of the aforesaid settlement agreement." The decree also provided that "neither of the parties hereto shall hereafter have any claim of right, title or interest of any kind in, to and against the property of the other from and after the entry of the Decree, including all inchoate rights of dower, curtesy, homestead or other interest of either party in and to the property of the other arising by virtue of the marriage of the parties hereto or otherwise, . . . ." We think these considerations are indicative of the intention of the parties that a property settlement was contemplated, and that the provision for the payment of $55,000 in installments of $450 was not considered by them as periodic alimony.

In an unbroken line of cases reported prior to 1944 the courts of this state consistently held that decrees for divorce could not be modified under section 18 of the Divorce Act by reason of phrases used in decrees such as "gross alimony" or "alimony in gross." *Banck v. Banck,* decided in 1944, 322 Ill. App. 369, for the first time held that the provision in a property and alimony settlement agreement requiring the husband to pay the wife $4500 "as gross alimony . . . : $500 upon the rendition of this decree and the balance in monthly installments of $100 each," constituted periodic alimony. Leave to appeal from that decision

was denied in the Supreme Court, as a result of which the Second Division of the Appellate Court in this district in *Hotzfield v. Hotzfield,* 336 Ill. App. 238, adopted the opinion of the *Banck* case, and thus presented a difference of opinion among the Appellate Courts in this State. Then followed the recent case of *Walters v. Walters,* 341 Ill. App. 561, decided in October 1950. In that case a decree of divorce had been entered in the Superior Court in 1946 which required the husband to pay the wife a substantial sum of money over a period of ten years in installments of $267 per month. The wife subsequently remarried, whereupon the husband refused to make further payments under the decree, and the wife filed her petition to show cause, citing defendant for contempt of court. He answered, and shortly thereafter sought a modification of the decree absolving him from further payments. The chancellor entered such an order, which was appealed to this court. The opinion here, consisting of a majority, a specially concurring and a dissenting opinion, contains an exhaustive resume of the cases in this field, and resulted in a reversal of the order of the Superior Court and remandment with directions. Because of the apparent conflict in the various Appellate Court decisions of our own State, the case went to the Supreme Court upon a certificate of importance and was there affirmed (*Walters v. Walters,* 409 Ill. 298) with the observation that "this is the first time the precise question has been presented to this court." The relevancies and application of the issues in the *Walters* case are of compelling significance. Without undertaking to enumerate them in detail it will suffice to point out that the agreement there, as in the case at bar, was for a definite amount of money, the payments were required to be made over a definite length of time, it was by consent of the parties, it barred, and was understood by the parties to bar, all further claims to alimony and all right,

 

title and interest in and to defendant's property, the obligation was made a specific charge against property owned by the parties, and their intentions were established by the pleadings, the testimony and the recitals in the decree.

In the *Walters* case the Supreme Court pointed out that "the contract and decree repeatedly refer to a property settlement," as do the contract and decree in the case at bar, and the Supreme Court pertinently observed that "parties to divorce suits are to be commended for their attempts to settle their property interests amicably. This not only saves the courts from being fraught with detail, and the necessity of repeated, recurrent hearings, but leads to better feeling and the peace of mind among the litigants. In proper property settlement cases where equities are surrendered and substantial rights relinquished, no party should be penalized for refraining from throwing the burden of a piecemeal accounting upon the court." In discussing the applicable rule of law, the court said that "in *Kohl v. Kohl,* 330 Ill. App. 284, which is the nearest in analogy to this case, the [Illinois Appellate] court adequately distinguishes the *Banck case (Banck v. Banck,* 332 Ill. App. 369,) from the case at bar," considered it unnecessary to discuss the *Hotzfield* case (336 Ill. App. 238), "as that case follows and quotes at length and verbatim from the *Banck case,*" and observed that "the harshness of the strict application of the rules stated in the *Banck case* to other cases, without due consideration to the particular facts involved, no doubt led to the adoption by the legislature of the 1949 amendment, wherein, at least as to decrees entered before and modified after its adoption, this situation cannot again occur." In the case at bar the $100,000 to be paid to plaintiff was divided into three categories: (1) her interest in the homestead, to which she held title in joint tenancy; (2) her attorneys' fees, to which she was entitled under the statute, and

which were paid to her counsel; and (3) $55,000 in lieu of alimony, dower and any other rights that she had or might have had in property of her husband. It therefore seems obvious that the amount of $55,000 agreed upon was the only consideration received by her, except for the items to which she would have been entitled as a matter of law without any agreement. After an examination of the entire record we think it would do violence to the terms of the agreement itself to hold that the $55,000 item was intended to be construed as periodic payments of alimony.

██ It is urged by defendant in this proceeding that the provisions of the Internal Revenue Code (26 U. S. C. A. secs. 22 (k) and 23 (u)) and regulations thereunder (Regulations III, sec. 23, and Supplement to Regulations III, sec. 29.22 (k)) enabling him to deduct the installment payments from gross revenue where installments extend over a period of ten years, is indicative of the intention of the parties that the payment of $55,000 was regarded by them as periodic alimony. A similar contention was made in the *Walters* case where plaintiff charged that the words "alimony in gross" were inserted in the contract solely for that purpose. The Supreme Court, commenting on this arrangement, said that "it is interesting to note in this connection that the agreed consideration of $34,540 [the gross sum agreed upon by the parties in the *Walters* case] was reduced by the initial payment of $2,500 at the time the decree was entered, and that the balance of $32,040 was payable at the rate of $267 per month, thus satisfying this balance over a period of exactly ten years and one month from the date of the decree, giving to defendant the benefit of these provisions." Strikingly similar is the provision in the instant contract that the $55,000 payment was likewise to be satisfied over a ten-year period (ten years and two months, to be specific), giving to defendant the

benefit of the revenue provisions. The Supreme Court in the *Walters* case disregarded the ten-year provision as an indication of the intention of the parties. We think that such a provision is an arbitrary distinction or provision for tax purposes, and should in no event be construed contrary to the manifest intention of the parties when they entered into an agreement which has strong indications of a property settlement.

For the reasons stated we hold that the order of the superior court striking defendant's petition to terminate payments to plaintiff was proper, and it is therefore affirmed.

*Order affirmed.*

BURKE, P. J. and NIEMEYER, J., concur.